# IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF THE STATE OF OKLAHOMA

| | |
|---|---|
| THI LE and UYEN MAI,<br><br>        Plaintiffs,<br><br>v.<br><br>STATE FARM FIRE AND CASUALTY COMPANY,<br><br>        Defendant. | Case No: CIV-23-380-SLP<br><br>**JURY TRIAL DEMANDED** |

## FIRST AMENDED COMPLAINT

Plaintiffs Thi Le and Uyen Mai, for their causes of action against Defendant, State Farm Fire and Casualty Company ("State Farm"), allege and state as follows:

1. At all times material hereto, the Le Family was insured under State Farm Policy No. 36-BF-Q193-0.

2. The Le Family are residents of Broken Arrow, Tulsa County, Oklahoma, and citizens of the State of Oklahoma.

3. During the policy period, the Le Family's home sustained damage due to a storm that occurred on or about February 25, 2022. The resulting damage is a covered cause of loss that occurred while the Le family was insured by Defendant State Farm (Claim No. 36-30X7-20W).

4. The Le Family submitted a claim for this loss to State Farm, made the premises available for inspection by State Farm's adjusters, cooperated in the limited investigation that State Farm performed, and otherwise complied with all conditions precedent to recovery under the subject insurance policy.

5. Defendant State Farm is a foreign corporation incorporated in Illinois and maintains its principal place of business in a state other than Oklahoma. State Farm is authorized to transact business within the State of Oklahoma and may be served with process through its designated service agent, identified as Oklahoma Insurance Commissioner, Glen Mulready, 400 N.E. 50th Street, Oklahoma City, Oklahoma 73105.

6. The parties are completely diverse and the amount in controversy exceeds the amount specified by 28 U.S.C. § 1332, thus this Court has jurisdiction over this matter.

7. Based on the foregoing, this Court has jurisdiction over these parties and this subject matter, and venue is proper herein.

## COUNT I

The Le Family fully incorporates each and every allegation in the preceding paragraphs of this Petition as if each were fully iterated verbatim herein, and for their claims against Defendant State Farm, allege and state:

8. State Farm breached the subject insurance contract by wrongfully denying coverage and failing and refusing to pay the proper amounts due under the policy for the covered damage to the Le Family's home.

9. State Farm breached the contract and the implied covenant of good faith and fair dealing in the insurance contract, as a matter of standard business practice, in the following respects, all in violation of the implied covenant of good faith and fair dealing and resulting in financial benefit to the Defendant State Farm.

10. State Farm had a duty to promptly provide the claimed insurance benefits. The insurance company's duty arises from the recognition that a substantial part of the right purchased

by an insured is to receive the policy benefits promptly. *Goodwin v. Old Republic Inc. Co.*, 1992 OK 34, ¶ 8, 828 P. 2d 431; *Christian v. American Home Assur. Co.*, 1977 OK 141, 577 P. 2d 899.

11.     The Le Family owns the home located at 1102 S. Yellowood Pl., Broken Arrow, OK 74012.

12.     The Le Family's home suffered significant damage due to a wind and hail storm.

13.     Plaintiffs submitted a claim for benefits to State Farm.

14.     State Farm acknowledged damage to the subject structure, but denied the Le Family's claim by asserting the cost to repair any damage was below the Le family's deductible, and no payments would be made.

15.     The Le Family submitted proof to State Farm that the shingles on the roof of their home were discontinued and thus the damage could not be repaired with like kind and quality materials, as required under the Policy.

16.     State Farm breached the contract and the implied covenant of good faith and fair dealing by refusing to reinspect the property in spite of the additional evidence submitted by the Le Family and their representatives.

17.     State Farm breached the contract and the implied covenant of good faith and fair dealing by refusing to reasonably consider meteorological data in determining the cause of loss.

18.     State Farm acted in bad faith by ignoring damage to Plaintiffs' home.

19.     Due to State Farm's failure to investigate Plaintiffs' claim, Plaintiffs were forced to hire a roofing professional to inspect the damage to their home.

20.     Plaintiffs' roofer documented and submitted additional evidence to State Farm demonstrating the damage caused by wind and hail to the roof of the home, and that the proposed repairs could not be performed due to the discontinued shingles.

21. State Farm failed to investigate and evaluate the submitted evidence.

22. State Farm proposed to the Le Family's roofer that a different shingle of a different size could be used to effect the repairs, and that the roofer would need to cut the nonconforming shingles to fit on the roof.

23. State Farm breached the contract and the implied covenant of good faith and fair dealing by refusing to consider Oklahoma code, manufacturer specifications, and industry standards when determining the necessary and proper repairs to restore Plaintiffs' home to its pre-loss condition.

24. Plaintiffs submitted to State Farm an estimate prepared by its public adjuster. The estimate detailed the type of roof, the extent of the damage, and the approximate amount it would take to perform the necessary repairs on the roof.

25. The total estimated amount to replace the damaged roofing system was in excess of $50,000.

26. State Farm failed to properly investigate Plaintiffs' claim by refusing to consider evidence submitted by Plaintiffs regarding the damage to the roof.

27. State Farm failed to properly evaluate Plaintiffs' claim by acknowledging the proposed repairs could not be performed due to the discontinued shingle, then reassigning Plaintiffs' claim to a different adjuster who later denied the claim.

28. State Farm refused to consider evidence of the insured home's pre-loss condition in determining scope of repair, and improperly denied this claim.

29. State Farm's failure to properly investigate and evaluate Plaintiffs' claim resulted in a gross underpayment and denial of Plaintiffs' claim.

30. State Farm breached the contract and the implied covenant of good faith and fair dealing by refusing to consider the reasonable expectations of the insured and by misconstruing and misapplying provisions of the policy.

31. State Farm's refusal to pay benefits was unreasonable under the circumstances because it failed to perform a proper investigation of the damage to the home.

32. State Farm's refusal to pay benefits was unreasonable under the circumstances because it failed to properly evaluate the limited investigation it did perform.

33. State Farm offered an unreasonably low amount to satisfy the claim due to State Farm's improper investigation and evaluation.

34. State Farm trains its adjuster must perform a proper investigation and evaluation of the claim.[1]

35. State Farm trains its adjuster that in order to write a proper evaluation, it must write a proper estimate to repair covered damage.

36. State Farm trains its adjusters that it must consider meteorological data and the age of roofing materials when writing its evaluation.

37. State Farm trains its adjusters that failing to consider meteorological data and the age of roofing materials could result in an improper evaluation and/or estimate.

38. In this case, State Farm had the meteorological data and information about the materials on Plaintiffs' roof. State Farm ignored that data and the company's final offer of settlement was unreasonably low.

39. State Farm adjusters are expected to thoroughly investigate each insurance claim.

---

[1] The following paragraphs alleging State Farm training is based on testimony of State Farm adjusters in prior cases.

40. State Farm trains its adjusters that it is State Farm's responsibility to investigate an insurance claim; not the insureds'.

41. State Farm trains its adjusters it would not be proper claims handling to ignore evidence that supports coverage.

42. In this claim, State Farm adjusters failed to thoroughly investigate the claim because it failed to provide information to its consultants relevant to the evaluation of the claim. Further, State Farm ignored evidence that supported paying a claim – specifically, documentation that was provided to it by Plaintiffs' roofer and Public Adjuster.

43. State Farm trains its adjusters to not make a claim decision (evaluation) until it has all the information necessary to make a determination of coverage.

44. In this claim, State Farm refused to provide its experts the information essential to its decision.

45. State Farm trains its adjusters that part of writing an accurate estimate is determining the proper repairs that need to be made to the roof.

46. In this claim, State Farm did not consider the proper repairs to Plaintiffs' home even though the documentation was provided by the roofer and Public Adjuster.

47. State Farm trains its adjusters to diligently investigate to determine if a claim is valid.

48. In this case, State Farm did not diligently investigate facts to determine if the claim is valid.

49. State Farm did not consult with counsel during the claim.

50. As a direct result of the above-described wrongful acts and omissions by State Farm, Plaintiffs suffered loss of the coverage and other consequential damages by State Farm.

**State Farms Has a Routine Business Practice of Unreasonably Lowballing Insurance Claims:[2]**

51.     The Le Family was treated as a matter of routine business practice of improper claims handling as described in this section. As a routine claims handling practice, State Farm treated Plaintiffs similar to other claims and cases described in this section.

52.     State Farm's conduct in the denial of the Le Family's insurance claim demonstrates a consistent, willful, pervasive, and abusive scheme to deny Oklahomans insurance benefits associated with hailstorms, in the following respects:

53.     As a matter of routine practice State Farm admits nominal covered damage, e.g., the soft metals and inexpensive roofing accessories, were damaged by the covered storm.

54.     State Farm admits insureds' roofs have "damage" all over the roof. State Farm routinely admits covered hail damage to property in the vicinity, such as mailboxes, cars, and outbuildings, while attributing roof damage to non-covered defects, wear and tear, or other excluded damage.

55.     State Farm pays for few, if any, damaged roofing materials on the insureds' roof despite demonstrably large hail and observable hail damage.

56.     State Farm improperly evaluates claims by estimating low benefit payments within a standard deviation above or below the deductible.

---

[2] [E]vidence regarding how Enterprise treated other claimants [was] relevant to that exercise. Such evidence is expressly allowed under Fed. R. Evid. 406. The only impact such evidence might have had on the jury was to convince them that Enterprise habitually denied claim in bad faith, precisely the point Vining wished to prove. Allowing such evidence…[was not] an abuse of discretion. *Vining*, F. 3d 1206, 1209 (10th Cir. 1998). Since the decision in *Vining*, "there has been no room for doubt that the plaintiff in a bad faith case… is entitled to support his bad faith claim, at least in part, by proving a deliberate, willful pattern of abusive conduct by [the insurer] in handling claims under its…insurance policies." *Markham v. Nat'l States Ins. CO.*, No. CIV-02-1606-F, 2004 WL 3019308, at *2.

57. On information and belief, State Farm has implemented new claims management and/or claims handling directives resulting in the systematic denial and/or underpayment of covered claims across the State of Oklahoma.

58. State Farm has implemented this claims handling practice across the state of Oklahoma, and Plaintiffs' counsel is aware of numerous cases that fit the same pattern and practice.

59. The new claim management and/or claim handling directive has resulted in numerous complaints by State Farm agents, adjusters, and insureds, made intentionally and to regulatory agencies, e.g., the Oklahoma Insurance Department.

60. The new claims management and/or claims handling directive has forced an increased number of insureds to file suit in order to recover owed and payable benefits.

61. The new claims management and/or claims handling directive has resulted in increased profitability for State Farm due to decreased claim benefits paid to insureds.

62. The new claims management and/or claims handling directive has resulted in a significant decrease in claims paid.

63. Insurance industry professionals across the State of Oklahoma have observed the new claims management and/or claims handling directive as well as the resulting increase in claim denials and underpayment of covered claims.

64. State Farm is aware of the new claims management and/or claims handling directive and supports the effort to effect a pattern and practice of wrongful claim denials and/or unreasonable "low-ball" settlement offers.

65. Evidence of State Farm's pattern and practice of denying wind and hail claims was the crux of recent jury trials in Oklahoma City – both of which resulted in verdicts in favor of the Plaintiff.

66.     *Bates v. State Farm* - On November 7, 2022, during a 5-day jury trial and only 6 hours of deliberation, a jury rendered a verdict stating State Farm acted in bad faith. Awarding $15,800 under the breach of contract claim and $325,000 for bad faith. This involved a wind and hail storm.

67.     During the *Bates* trial, the jury heard evidence of a significant hailstorm damaging the Plaintiff's roof.  A former State Farm adjuster discussed the new pattern and practice known as the "Hail Focus" initiative by State Farm (described in this proposition).  Ultimately, the initiative strips the decision making from the adjusters that actually inspect the buildings and requires managers to pay for covered damage.

68.     *Rowan v. State Farm* – an Oklahoma County jury awarded Plaintiffs $70,400 for breach of contract and $680,000 for bad faith conduct. This was a wind and hail loss.

69.     In *Rowan*, like this case, Defendant hired biased or outcome-oriented investigators to support its conclusions.

70.     Since making these changes to the claims handling department, State Farm has increased profitability. This is reflected in its loss ratios.

71.     State Farms loss ratios in 2020 demonstrate the company was more profitable by paying less of a percentage in claims.

72.     State Farms loss ratios in 2021 demonstrate the company was more profitable by paying less of a percentage in claims.

73.     State Farms loss ratios in 2022 demonstrate the company was more profitable by paying less of a percentage in claims.

74.     The increased aggression in which State Farm adjusts insurance claims nationwide has led to drastic increase in litigation against the company:

75. In 2015, State Farm had 250 cases filed against it in federal court

76. In 2016, State Farm had 254 cases filed against it in federal court.

77. In 2017, State Farm had 256 cases filed against it in federal court.

78. In 2018, State Farm had 273 cases filed against it in federal court.

79. In 2019, State Farm had 366 cases filed against it in federal court.

80. In 2020, State Farm had 366 cases filed against it in federal court.

81. In 2021, State Farm had 1,384 cases filed against it in federal court.

82. In 2022, State farm had over 2,331 cases filed against it in federal court.

83. In 2022, to fulfill State Farm's litigation defense needs, State Farm Fire currently employs at least four (4) different law firms in Oklahoma – Gable Gotwals, Crowe and Dunlevy, McAfee and Taft, and Atkinson, Brittingham, Gladd.

84. In the past 5 years, State Farm has hired other law firms to defend first party claims in Oklahoma.

85. State Farm has spent millions of dollars defending alleged wrongful denials in lawsuits filed in Oklahoma for wind and hail claims in the past 5 years.

86. In this claim, Defendant treated Plaintiffs in a similar manner as the other cases and claims above pursuant to State Farms routine claims handling practice of underpaying claims.

**State Farms Has a Routine Business Practice of Hiring Biased Investigators to Keep Claim Payments Unreasonably Low.**

87. State Farm's investigators are not qualified or licensed contractors or roofers in the State of Oklahoma.

88. Plaintiffs allege it was unreasonable for State Farm to rely on the opinions of its investigators, because they are not qualified to render reasonable evaluations – due to their lack of expertise in the roofing industry.

89. State Farm must hire unbiased experts to aid in the evaluation of insurance claims.

90. State Farm trains its adjusters to hire unbiased experts.

91. State Farm expects its experts to not render opinions until it has sufficient information to make a proper determination.

92. If State Farm investigators render opinions without all the information available on a claim, it can lead to improper evaluation and unreasonably low payments.

93. In this case, State Farm's investigators continue to render opinions that ignore the information provided by Plaintiffs and their representatives.

94. State Farm's investigators ignored the information provided by Plaintiffs because that information supports coverage and paying additional benefits.

95. State Farm has a history of hiring experts for the purpose of aiding underpaying insurance claims.

96. In the *Rowan* case, the verdict reflects evidence that State Farm hired biased engineers to underpay insurance benefits.

97. Defendant State Farm has a history of using biased outcome-oriented experts to underpay or deny insurance claims.

98. As a direct result of the above-described wrongful acts and omissions by State Farm, Plaintiffs have suffered loss of the coverage promised by State Farm, financial loss, and other consequential damages.

99.     Defendant State Farm's acts and omissions were made with reckless disregard for the Le Family's rights and/or were done intentionally and with malice and, therefore, Plaintiffs are entitled to recover punitive damages

**WHEREFORE**, Plaintiffs Thi Le and Uyen Mai pray for judgment against Defendant State Farm Fire and Casualty Company for their damages, both compensatory damages and punitive damages, with interest and costs of this action, for a reasonable attorney fee, and for such other relief as may be appropriate. The amount sought as damages is in excess of the jurisdictional amount required for diversity jurisdiction pursuant to § 1332 of Title 28 of the United States Code.

**MANSELL & ENGEL**

By: *s/Casey R. Lawson*
M. Adam Engel, OBA #32384
Jordyn L. Cartmell, OBA #31043

**JURY TRIAL DEMANDED**     Casey R. Lawson, OBA #33947
**ATTORNEY LIEN CLAIM**     204 North Robinson, 21st Floor
Oklahoma City, OK 73102-7201
T: (405) 232-4100 ** F: (405) 232-4140
E-mail:  aengel@meclaw.net
jcartmell@meclaw.net
clawson@meclaw.net

**ATTORNEYS FOR PLAINTIFFS**