**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| THI LE and UYEN MAI,<br><br>                              Plaintiffs,<br><br>        v.<br><br>STATE FARM FIRE AND CASUALTY COMPANY,<br><br>                              Defendants. | Case No: CIV-23-380-SLP |

**PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION TO DISMISS**

## I. Introduction

State Farm's motion is a waste of judicial effort. No Complaint is perfect; but Plaintiffs' First Amended Complaint easily sets out the factual basis for insurance bad faith. Even after *Twombly* and *Iqbal*: "Granting a motion to dismiss is a harsh remedy which must be cautiously studied, not only to effectuate the spirit of the liberal rules of pleading but also to protect the interests of justice." *Dias v. City & Cty. of Denver*, 567 F.3d 1169, 1178 (10th Cir. 2009) (cleaned up) (as recognized in *Allen v. Town of Colcord*, 874 F. Supp. 2d 1276, 1283 (N.D. Okla. 2012)). Nothing about the First Amended Complaint remotely supports dismissing the bad faith claim.[1]

## II. Factual Background

Plaintiffs own a home in Broken Arrow. Doc. 6, ¶¶ 2, 11. They were insured by State Farm when the home sustained damaged from a wind and hailstorm. *Id.* at ¶¶ 1, 3,

---

[1] Also, Plaintiffs did not concede improper joinder; they discovered they were unable to identify the right roofing company. Mindful of Rule 11, Plaintiffs chose not to sue the wrong roofer.

12. (Thus, contrary to State Farm's claim, the Hail Focus program is at issue here[2]). Plaintiffs submitted a claim which State Farm accepted. *Id.* at ¶¶ 13-14. State Farm agreed there was covered damage to soft metals, and to *some* roofing shingles, but excluded coverage for most of the damage, claiming the damage was caused by something other than the storm, such as wear and tear. *Id.* at ¶¶ 14. By doing so, State Farm ignored Plaintiffs' evidence of the home's pre-loss condition, which condition was inconsistent with State Farm's determination that the storm did not cause the damage. *Id.* at ¶¶ 28. State Farm thus assessed the damage at less than Plaintiff's deductible. *Id.* at ¶¶ 14.

State Farm's less than the deductible claim evaluation *was also derived from an improper repair plan* (even assuming that it properly identified which shingles were storm damaged): Plaintiffs' roof has discontinued shingles making it impossible to repair the roof with matching, like kind and quality shingles, which is what is covered by the policy. *Id.* at ¶¶ 15-16, 20, 23. When repairs cannot be made with like kind and quality shingles, an insurer must—per the policy and per industry standard—replace the entire damaged roof surface. *Id.* at ¶¶ 15, 30. State Farm instead estimated to spot repair the roof by cutting down new but nonconforming, oversized shingles *to patch onto the roof*; that is not "like kind and quality materials,". *Id.* at ¶¶ 15, 22, 27. That plan was contrary to Plaintiffs' roofer's and their public adjuster's evaluations—and even contrary to the evaluation of

---

[2] Twice (Mot. pp. 6, 10) State Farm claims this was a wind claim only, yet it is clear from the First Amended Complaint that there was hail damage *to Plaintiffs' home. Id.* at ¶¶ 12, 20. State Farm acknowledges this at page 4 of the motion: "In the sole count of the First Amended Complaint, Plaintiffs acknowledge that, after their house 'suffered significant damage due to a wind and hailstorm,' they 'submitted a claim . . . .'"

State Farm's own initial adjuster. 15-16, 20, 23. [3] It was that improper "cut and paste" repair evaluation, along with the refusal to identify all the hail damage, that rendered the improper *less than deductible* repair estimate. *Id.* at ¶¶ 20, 22, 24-27, 29.

State Farm has a pattern and practice, established in many cases, of evaluating storm damage at or below the deductible. *Id.* at ¶¶ 53-56. That pattern and practice is part of a scheme to defraud State Farm insureds that State Farm calls its "Hail Focus." *Id.* at 67. State Farm knows that such a pattern and practice constitutes bad faith. *Id.* at ¶¶ 32-37.

That State Farm applied the Hail Focus and other improper practices here is evidenced by Plaintiffs' claim that State Farm ignored meteorological data in its possession that showed (1) the storm to be of greater intensity than claimed by State Farm and (2) that it included demonstrably larger hail than claimed by State Farm. *Id.* at ¶¶ 17, 36-42, 55. Additionally, the observable hail damage to roof metals and other objects was inconsistent with State Farm's claims that the damage was caused by wear and tear and other causes. *Id.* at ¶¶ 53-55 (and as noted above, State Farm's analysis is inconsistent with the roof's pre-loss condition). The pattern and practice of intentionally undervaluing claims is shown also by State Farm's determination that it was appropriate to repair the roof by taking mismatched shingles and "cutting" them to fit into Plaintiffs' roof. *Id.* at ¶¶ 14-15, 20-27.

State Farm stuck to its illegal pattern even after Plaintiff's roofer and public adjuster submitted additional evidence, including supporting documentation, that the damage was

---

[3] If State Farm's plan to "*cut*" perfectly good shingles to spot "*paste*" into a damaged roof does not give rise to a "plausible" bad faith claim, then insurance bad faith is no longer an available claim in federal court. (This is a far worse "wrong" cutting and pasting from a bad faith article into a bad faith petition).

caused by the storm and that the "cut and paste" repair plan was improper. *Id.* at ¶¶ 15-29. Then, when Plaintiffs submitted additional evidence, from their public adjuster, confirming what the roofer claimed about there being additional storm damage missed or ignored by State Farm, the insurer ignored that too to insist that the spot repair proposal was proper. *Id.* at ¶¶ 24-26. Plaintiffs, their roofer, and the public adjuster (and as shown in the next paragraph, even State Farm's own first adjuster) thus notified State Farm that proper repair to pre-loss condition in the absence of like kind and quality patching materials requires replacement of the storm damaged sections of the roof. *Id.* at ¶¶ 15, 19-20, 24-25.

Additionally of importance to the bad faith allegations, State Farm at first agreed that the proposed repairs could not be performed—thus replacement was necessary. State Farm then assigned the claim to a different adjuster who returned State Farm to its scheme to defraud via the improper cut and paste repair method. *Id.* at ¶ 27. State Farm thus ignored the contrary evidence submitted by the roofer and the public adjuster—*and its own adjuster*—to stick with its improper repair proposal. *Id.* at ¶¶ 21, 26-27.

State Farm's evaluation of the claim and "payment" (or lack thereof) was also grossly inadequate because its determination that the damage could be spot repaired by cutting down non-matching, oversized shingles violates building code, manufacturing installation and repair guidelines, and industry standard. *Id.* at ¶¶ 23, 29.

Despite all the stated evidence, State Farm ignored the roofer's and the public adjusters evaluation—and the evaluation of its own adjuster—and proceeded with its repair proposal of cutting nonconforming and non "like kind and quality materials" to

patch onto the roof. *Id.* at ¶¶ 15, 22, 27. That was unreasonable of State Farm and resulted in the zero dollar claim "payment." *Id.* at ¶¶14, 29.

With its improper cut and paste repair proposal, State Farm misconstrued and misapplied the provisions of the policy that require like kind and quality repair or replacement of the damaged parts. *Id.* at ¶¶ 30. In addition to violating the policy (and code, manufacturer guidelines and industry standard) this also violated the reasonable expectation doctrine. *Id.* at ¶¶ 30.

In addition to the above, State Farm applied a number of improper claims handling "practices" **to Plaintiff's claim** (*Id.* at ¶¶ 51-52, 86, 98) that State Farm has implemented in a systematic effort to save money by denying or underpaying legitimate claims. *Id.* at ¶¶ 51-52, 60-73. Those improper business practices include admitting to nominal covered damage to roof metals and other nearby objects but claiming the hail was not of sufficient size to cause damage the roofing shingles; State Farm then attributes the shingle damage to other causes such as wear and tear instead. *Id.* at ¶¶ 53-55. State Farm's pattern of intentionally undervaluing claims is part of a scheme called the "Hail Focus" program. *Id.* at ¶¶ 67. The existence of this program was admitted to by a former State Farm adjuster in a recent Oklahoma case. *Id.* at ¶¶ 67. The result of the program is that insureds, such as Plaintiffs here, are forced by State Farm to file suit to recover policy benefits that State Farm knows they are owed. *Id.* at ¶¶ 57-85.

State Farm's pattern and practice methodology of undervaluing legitimate claims applied to Plaintiff's claim included relying upon claims adjusters and other investigators who lack experience, qualification, or licensing appropriate to the task of evaluating roof

damage claims and appropriate repair methods. *Id.* at ¶¶ 87-88. Additionally, State Farm applied a pattern and practice of using biased investigators to evaluate Plaintiffs' claim in an effort to systematically undervalue Plaintiff's and other insured's claim in order to save money by denying or undervaluing legitimate claims. *Id.* at ¶¶ 89-98.

(Again, the above was drafted by someone who knows nothing about the subject claim other than what can be gleaned from the facts stated in the complaint and the reasonable inferences therefrom. State Farm undoubtedly knows more about these facts than does this drafter.)

The above factual allegations give rise to the following inferences of bad faith claims handling:

- State Farm failed to properly investigate or did not actually rely on the results of its investigation by using unqualified and biased investigators, by refusing to consider conflicting evidence such as the home's pre-loss condition, the meteorological and observed hail damage evidence, and the evidence submitted by the roofer and the public adjuster that State Farm's repair proposal violated the policy, code, manufacturer requirements and industry standards.

- State Farm denied part of the claim for illegitimate reasons by ignoring pre-loss condition, false claims that damage was preexisting, and by adopting the improper cut and paste repair plan and the Hail Focus initiative.

- State Farm's claims handling resulted in a grossly inadequate—or "unreasonably low"—claim "payment" of zero dollars rather than the $50,000, plus, estimated by

the public adjuster. *Id.* at ¶ 25.

- State Farm misrepresented coverage with its proposal to cut and paste oversized shingles when the policy required replacement when like kind and quality materials were unavailable.

- State Farm put its interests above those of its insured's when it refused to abide by required replacement methodology and by applying a systematic scheme to deprive Plaintiffs of policy benefits they were rightfully owed.

- State Farm violated industry standards when it ignored relevant code, manufacturer installation and repair guidelines, and other industry standards.

- State Farm changed its coverage position—and the position of its own adjuster—to save money by initially accepting and then rejecting the policy requirement of replacement with new materials rather than spot repair with incompatible materials.

- By all of the above, State Farm forced Plaintiffs to file suit to recover policy benefits that State Farm knew were due.

As is shown in Section C, below, titled "Bad Faith May be Proven in Many Ways," all of the above bullet point items are ways to prove bad faith. Plaintiff's complaint properly sets out a claim of insurance bad faith such that the motion must be overruled.

### III. Argument and Authority

### A.   Legal Standard for Motions to Dismiss

The purpose of a motion to dismiss is not to test the merits of the factual claims; it is solely a tool for testing *the legal sufficiency* of the plaintiff's complaint. E.g., *Brokers'*

7

*Choice of Am., Inc. v. NBC Universal, Inc.*, 861 F.3d 1081, 1103 (10th Cir. 2017). Accordingly, a well-pled complaint need only contain factual allegations sufficient to nudge a claim from "conceivable," to "plausible." *Warnick v. Cooley*, 895 F.3d 746, 751 (10th Cir. 2018). The "plausibility" standard does not require that the complaint demonstrate a "probability" of success. *Thomas v. Stitt*, No. 21-6011, 2022 U.S. App. LEXIS 2888, at *8-9 (10th Cir. Feb. 1, 2022). In the end, a complaint must "give just enough factual detail to provide 'fair notice of what the claim is and the grounds upon which it rests.'" In deciding whether the First Amended Complaint is adequate, the Court must assume the truth of the facts in the complaint and draw all reasonable inferences therefrom in the light most favorable to the plaintiffs. *Dias*, 567 F.3d at 1178; *Thomas v. Stitt*, 2022 U.S. App. LEXIS 2888 at *8.

Finally, as noted earlier, "[d]ismissal is a harsh remedy to be used cautiously so as to promote the liberal rules of pleading while protecting the interests of justice." *Davis,* 886 F.Supp. at 807-08, *citing, Cayman Exploration Corp. v. United Gas Pipe Line,* 873 F.2d 1357, 1359 (10th Cir. 1989). Plaintiffs satisfy the rules with their complaint such that the motion must be overruled.

## B. That State Farm Does Not Really Think the Complaint is Deficient is Shown by its Conduct in Many Other Cases Handled by The Undersigned Firm

Despite its posture in this case, State Farm has in numerous other bad faith actions filed by the undersigned firm, acknowledged the sufficiency of far less specific pleadings by filing answers, rather than motions to dismiss. Plaintiffs' counsel practices exclusively in insurance breach of contract/bad faith law. Of no great surprise, this leads to the filing

of numerous lawsuits against the same defendant insurance companies. Often, as in this case, the defendant is State Farm Fire and Casualty Company. State Farm recently began filing 12(b)(6) motions to dismiss for failure to state a claim in response to newly filed lawsuits. To avoid unnecessary briefing in the very beginning stages of litigation, Plaintiffs' counsel revised their petition template to include more details that are unquestionably sufficient not just under Oklahoma's more lenient pleading standard, but under the federal pleading standard as well. Additionally, the firm adds to the template facts specific to each case.

Despite these efforts, State Farm intermittently chooses to question the legitimacy of new filings by filing motions to dismiss. The lack of merit in State Farm's motion to dismiss in this case is best shown by comparing Plaintiffs' amended complaint to the petitions and complaints filed in other cases against State Farm. *See* Plaintiffs' Exhibits 1 through 14. In those other cases, the Plaintiffs filed petitions and complaints much shorter and more generic than Plaintiffs' amended complaint in this case. Nevertheless, State Farm did not question the adequacy of the claims therein but answered the initial pleadings without moving to dismiss. It is further worth noting that the cases listed in Exhibits 1 through 14 are just those cases that are currently pending. There are a significant number of older, resolved cases against Defendant State Farm initiated with the shorter, more generic petition template that also did not draw motions to dismiss.

State Farm cannot legitimately attack the sufficiency of the claims in Plaintiffs' amended complaint in this case when it regularly concedes to the sufficiency of pleadings in other cases against it that are pled with far less specificity and detail; indeed, State Farm

9

not only concedes to the sufficiency of those pleadings, but apparently prefers the less specific version of the pleadings.

Plaintiffs' undersigned counsel recently had a case against State Farm removed from Oklahoma state court to federal court. There, the parties were diverse and there was no question of diversity jurisdiction. To preempt the anticipated 12(b)(6) motion to dismiss, Plaintiff's counsel filed the aforementioned bolstered amended complaint so to avoid wasting judicial time and resources on duplicative briefing. Remarkably, State Farm's counsel in that case, from the same defense firm as in this case, requested that plaintiff file a second amended complaint reverting to the original, less specific version. Plaintiffs' Exhibit 15, Email Thread, and Plaintiffs' Exhibit 3. Plaintiffs' counsel agreed, and State Farm answered without moving to dismiss.

Despite the above, this is one of those "intermittent" cases where State Farm randomly criticizes Plaintiff's complaint and files the same form motion to dismiss. This time, State Farm only cites the undersigned firm's petitions in cases where State Farm's form motion has yet to be decided. Also noteworthy, State Farm continues to discuss the same three or four cases in these motions despite the undersigned having previously shown those cases are as distinguishable as night is from day. See Exhibit 16 (the undersigned firm's responses in *Jackson* and *Knarr*).

The *Twombly* pleading requirement "serves two purposes: 'to ensure that a defendant is placed on notice of [its] alleged misconduct sufficient to prepare an appropriate defense,' and 'to avoid ginning up the costly machinery associated with our civil discovery regime on the basis of "a largely groundless claim."'" *Kan. Penn Gaming,*

10

*LLC v. Collins*, 656 F. 3d 1210, 1215 (10th Cir. 2011) (quoting *Pace v. Swedlow*, 519 F. 3d 1067, 1076 (10th Cir. 2008) (Gorsuch, J., concurring) (quoting *Twombly*, 550 U.S. at 557))). Through Plaintiffs' amended complaint, State Farm has been adequately placed on notice of its alleged conduct in this case and the allegations as pled more than support a claim that is plausible on its face. The motion should be overruled.

## C. Bad Faith May be Proven in Many Ways

Because an insurer must conduct a reasonable investigation (*Newport v. USAA*, 2000 OK 59, 11 P.3d 190, 195) and promptly pay all valid claims (*Christian v. American Home Assurance Co.*, 1977 OK 141, ¶¶ 20-23, 577 P.2d 899, 901; *Mireles v. Liberty Ins. Corp.*, No. CIV-21-843-F, 2023 U.S. Dist. LEXIS 10041, at *21 (W.D. Okla. Jan. 20, 2023) (applying delay rule to property claim)) cases hold that even in the face of a "legitimate dispute," an insurer may still be in bad faith if the circumstances give rise to an inference that the insurer:

- Performed an inadequate investigation.

- Did not really rely on the results of its investigation.

- Denied the claim (or part of the claim) for an illegitimate reason, or

- Otherwise failed to treat the insured fairly.

*Barraza v. State Farm Fire & Cas. Co*., No. 21-CV-0282-CVE-CDL, 2023 U.S. Dist. LEXIS 10717, at *25-26 (N.D. Okla. Jan. 23, 2023) (citing multiple appellate cases). *Barraza* is consistent with Oklahoma' bad faith jury instruction, OUJI 22.2:

> [The Insurer's] refusal to pay the claim in full was unreasonable under the circumstances, because [for example, that 1) it did not perform a proper

investigation, 2) it did not <u>evaluate</u> the results of the investigation properly, 3) it had <u>no reasonable basis for the refusal</u>, **OR** 4) the amount it offered to satisfy the claim was <u>unreasonably low</u>]

The instruction, though, adds an additional basis to those noted in *Barraza*:

- offering an unreasonably low claim evaluation.

In addition to all the above, it is bad faith for an insurer to:

- Misrepresent coverage (e.g., *Hill v. Agri-Risk Servs.*, 1992 OK CIV APP 16, 827 P.2d 904).

- Put its interests above the insured's (*Badillo v. Mid Century Ins. Co.*, 2005 OK 48, ¶ 30, 121 P.3d, 1080, 1094).

- Ignore established law (*Brown v. Patel,* 2007 OK 16, ¶ 11, 157 P.3d 117, 122).

- Violate statute, code, or industry standards (*Embry v. Innovative Aftermarket Sys. L.P.,* 2010 OK 82, ¶ 12, 247 P.3d 1158, 1161).

- Change coverage positions or determinations to save money E.g., *A.B. v. Health Care Serv. Corp.*, No. CIV-14-990-D, 2018 U.S. Dist. LEXIS 22537, at *23 (W.D. Okla. Feb. 12, 2018); *Buzzard v. McDaniel,* 1987 OK 28, 736 P.2d 157, 159).

- Force and insured to sue to recover policy benefits the insurer knows to be due (*Brown v. Patel,* 2007 OK 16, ¶ 26, 157 P.3d 117, 127 (holding it is not bad faith to resort to judicial forum to resolve <u>*a legitimate*</u> dispute)).

Finally, despite some reported cases to the contrary, Oklahoma bad faith does not require a showing of intent do harm or to deceive. This is made clear in *Badillo,* Oklahoma's "primer" on bad faith law. First, *Badillo* negates the claim that bad faith is an

intentional tort <u>to "make it plain" that bad faith does not require a showing that the insurer</u>

<u>intended to harm or deceive the insured:</u>

> In *McCorkle . . .* the Court referred to the tort at issue as "the intentional tort of bad faith," the phrase, in our view, being used as a short hand reference for the tortious conduct consisting of breach of the duty of good faith and fair dealing. Regardless of why the phrase was used there (or other cases), <u>we make it plain at this time that use of the language, "the intentional tort of bad faith," is not meant to convey that in order to recover for breach of the duty of good faith and fair dealing, an insured must prove the insurer intended to harm or deceive its insured. Breach of the duty may be shown without proving conduct on the part of an insurer that was intended to harm, injure or deceive its insured.</u>

*Badillo,* 2005 OK 48 n.6, 121 P.3d at 1093. Emphasis added. It is in the above context that

*Badillo* then sets out the Oklahoma bad faith standard: "[T]he minimum level of culpability

necessary for liability against an insurer to attach is more than simple negligence, but less

than the reckless conduct necessary to sanction a punitive damage award against said

insurer." *Id.* at ¶ 28, 1094. The Court could have further defined this minimum culpability,

but it did not, Since the Court declined to further define the starting point for bad faith, the

District Court's role in deciding the bad faith question is simply to evaluate whether the

evidence supports a reasonable inference of conduct falling on a scale that includes "greater

than simple negligence" at its low end. Beyond that is jury territory. Badillo then teaches

that "direct evidence" is not required to prove bad faith. Id. at ¶ 28, 1093. Emphasis added.

Finally, *Badillo* states that whenever there is conflicting evidence from which different

inferences may be drawn, the question of bad faith must be given to the jury. Given the

many means of proving bad faith, and the bad faith standards announced in *Badillo,* it would be reversible error to dismiss the bad faith claim at this juncture.

## D. Bad Faith Law Applied to a Complex Factual Situation

A recent Oklahoma bad faith case teaches how the *Badillo* standard should be applied to complex bad faith *facts* **(important here since motions to dismiss decide only legal sufficiency)**: *Linn v. Oklahoma Farm Bureau Mut. Ins. Co*., 2020 OK CIV APP 62, 479 P.3d 1013. The Linns submitted a claim for missing cattle. Their policy covered the loss if theft was "likely." OFB denied because a Texas Ranger had investigated and found no evidence of theft. Thus, OFB claimed a "legitimate dispute." The Linns claimed that the Ranger's finding was inconsistent with other evidence that OFB should have discovered. *Id.* at ¶ 11. After noting the conflicting claims, *Linn* notes the rule from *Badillo*: "*Badillo* clearly states that, when there is conflicting evidence from which different inferences may be drawn regarding the reasonableness of an insurer's conduct, what is reasonable is always a question to be determined by the trier of fact." *Id.* at ¶ 12. *Linn* then contrasts that "factual" dispute with one that is primarily "legal" and holds that "whether there [is] a reasonable and legitimate factual dispute" is appropriately decided by the jury:

> Situations similar to that presented here are less clear cut as to what behavior or reliance is reasonable, and often present a jury question. The question here was not primarily a legal dispute as to policy interpretation, but one of whether there was a reasonable and legitimate factual dispute as to theft pursuant to the *Badillo* standard. In clear situations such as *Andres* where the dispute is primarily legal, i.e., one based on the interpretation of policy language, it is often possible for a court to determine reasonableness as matter of law. Here, however, the coverage dispute was a purely factual dispute as to whether theft had "likely" occurred. In such a case, "reasonableness" tends more towards becoming a jury question. The fact

pattern here was complex and did not lend itself to resolution as a matter of
law.

Id. at ¶¶ 13-14, 1019.

The bad faith question in *Linn* revolved around a single issue: whether the cattle's
"disappearance" was "likely" theft. But resolving that single question implicated several
factual matters: whether the Ranger's investigation was accurate, and whether it was
reasonable for the insurer to accept the Ranger's conclusion. The answer required analysis
of the foundation of the Ranger's findings and consideration of inconsistencies in the
evidence. Such disputes are just not appropriate for legal disposition. This case is also not
one primarily involving a legal dispute but several separate and discrete fact questions: (1)
whether State Farm's initial evaluation to cut mismatched shingles was reasonable; (2)
whether it was reasonable to ignore pre-loss condition, the meteorological data, and the
evidence presented by the roofer and the public adjuster regarding the cause of damage and
appropriate repair methodology; (3) whether State Farm applied the "Hail Focus" to this
claim (and whether that was reasonable); (4) whether it was reasonable to deny like kind
and quality repair; (5) whether State Farm intentionally refused to apply the policy to the
claim as written. This is one of those complex fact patterns, like *Linn,* appropriately decided
by jury. As such, dismissal is improper.

State Farm criticizes Plaintiffs for only a few specific facts, such as failing to list
the specific code sections and policy provisions in the complaint (Mot. at 12). By this it
seems to concede that it knows what manufacturer specifications and industry standards it
violated by its unreasonable "cut and paste" repair methodology. To that point, State Farm

of course knows that its plan violates the policy, manufacturer guidelines (negating warranty) and insurance and roofing industry standards. Likewise, State Farm is sophisticated enough to recognize that the policy provisions at issue are those requiring loss payment for like kind and quality. Regardless, the proper pleading standard frowns only on facts that are "so general that they encompass a wide swath of conduct [much of which is] innocent." *Robbins v. Okla. ex rel. Dep't of Human Servs*., 519 F.3d 1242, 1247 (10th Cir. 2008). There is nothing innocent about a repair plan that violates industry standard and manufacturer's installation guidelines, as well as the requirements in the subject policy—that at least "plausibly" states improper insurance claims handling. And that does not take into account the other misdeeds stated in the complaint. Likewise, the "allegations [need only] be enough that, if assumed to be true, the plaintiff plausibly (not just speculatively) has a claim for relief." *Id.* Plaintiffs' allegations are sufficiently specific to do that.

State Farm also complains that Plaintiffs did not specify the meteorological data— but Rule 9's heightened standard does not apply to insurance bad faith. State Farm knows that Plaintiffs refer to the meteorological data Plaintiffs presented for consideration—as noted in the complaint, that data showed larger hail in the area at the time than alleged by State Farm. Rule 8 just does not require the "detailed factual allegations" demanded by State Farm—and a plaintiff need not "go beyond" what is required by the Rule. *Eddy v. Hospitality*, No. CIV-18-1051-SLP, 2019 U.S. Dist. LEXIS 241154, at *6 (W.D. Okla. May 28, 2019). This is not a complaint of "the-defendant-unlawfully-harmed-me accusation" variety that is insufficient under *Twombly* and *Iqbal*. Plaintiff's First Amended

16

Complaint satisfies the rules. Additionally, determining whether a complaint survives a motion to dismiss is a "context-specific task" that permits the Cout to draw upon its experience and common sense. *Hermes v. Okla. Arthritis Ctr.*, No. CIV-20-871-SLP, 2021 U.S. Dist. LEXIS 153206, at *6 (W.D. Okla. June 8, 2021) Here, the "discovery machine" is already "ginned up" for the contract claim. Plaintiffs will already get the same discovery from State Farm that will prove the bad faith claim; the purpose of *Twombly* and *Iqbal* is satisfied.

**E. Federal Cases Agree Juries Decide Complex Bad Faith Facts in Oklahoma**

Federal courts heed the rule of *Linn* in Oklahoma bad faith cases. Judge Cauthron applies it in *Coffin v. Covington Specialty Ins. Co.,* 2020 U.S. Dist. LEXIS 235328. Though also a summary judgment case, like *Linn, Coffin* is helpful in deciding whether the First Amended Complaint *plausibly* states conduct legally sufficient to rise to bad faith.

First *Coffin* sets out the facts "either undisputed or viewed in the light most favorable to Plaintiff": The insured noticed that his HVAC units were not working and contacted a repair company which inspected and "indicated . . . the damage . . . **may** have been caused by lighting." Emphasis added. The insured filed a claim and the insurer hired a third-party administrator (TPA) to assist. The TPA requested photos and "information from the repair technician" and asked the technician to fill out a "Loss Verification Affidavit." The affidavit was returned because it did not "specify the cause of damage" and was not signed by the plaintiff. The insured then had a different HVAC company inspect and that technician said the damage was "caused by lightning." The TPA then obtained a lightning report from a third-party vendor showing no lightning near the property.

Based on that record, the insurer denied the claim. No doubt that insurer was confident the federal court would grant summary judgment on the bad faith claim. After all, the first technician was unsure of the cause and the third party report showed there was no lighting in the area and OFB claimed a "legitimate dispute." *Id.* at *5. Still Judge Cauthron denied summary judgment because the jury might "see inconsistencies in the repair technicians' reports **or** the jury [might] see they clearly identify the cause of the damage to the HVAC units as lightning." *Id.* Likewise, "the jury [might] find that relying on the [third party] failed to treat the insured in good faith . . . ." *Id.* "Thus, [per] *Linn* . . . the decision [was] one for the jury, rather than the Court." *Id.* So too here. The jury may find that the facts described in the complaint do not show "good faith."

If the above conduct was sufficient to survive summary judgment in *Linn* and *Coffin,* it was certainly sufficient to survive a motion to dismiss. The *Linn/Coffin* conduct is much like that alleged here. Like the insurers in *Linn* and *Coffin,* State Farm ignored evidence contrary to its claim decision. Though it had its own evidence allegedly supporting its decision, that did not mean its decision was "reasonable" as a matter of law— certainly not short of discovery. Likewise, if it was potential bad faith to rely on storm data supporting the insurer's position, then certainly it may be bad faith to ignore evidence that does not support the claim decision. Finally, here, unlike the insurers in *Linn* or *Coffin,* State Farm ignored even the evaluation of its own first adjuster, its own policy, the manufacturer guidelines, and industry standards.

State Farm cites *Hartsfield* (Mot. p. 9), also from Judge Cauthron (misidentified as decided by "this Court"). Judge Cauthron did not "dismiss" that claim (under Rule

18

12(B)(6)); she granted summary judgment <u>after careful consideration of a fully developed</u> <u>record</u>. One, *Coffin* tells us that Judge Cauthron would have decided *Hartfield* differently had *Linn* been available at that time. Two, that State Farm cites *Hartfield* for a general rule that it can never be in bad faith for disagreeing with its insured's claim evaluation is very telling. Undoubtedly that played into State Farm's determination that it could get away with the Hail Focus. That was a serious miscalculation of the law on State Farm's part.

State Farm then cites *Scheffler v. Am. Republic Ins. Co.,* from Judge Eagan in the Northern District. That complaint "contain[ed] only general assertions of bad faith, without any details of events leading up to the filing of the complaint":

> Plaintiff alleges that defendant acted in bad faith by: "A. Failing to promptly investigate Plaintiff's claim; B. Delaying payment to the Plaintiff; C. Intentionally misreading or misconstruing the insurance policy; D. Imposing [*7] burdensome documentation demands not required by the facts of the claim or the policy; and E. Other acts or omissions to be determined in discovery."

To be sure, the problem was not that the complaint had conclusory allegations. Indeed, to that point, Judge Eagan noted that that plaintiff "ha[d] not set forth a single factual allegation <u>in support of [its] conclusory statements</u>." Emphasis added. The problem was that there were no specific factual allegations supporting those legal conclusions. That case does not forbid drawing conclusions from the facts. It stands only for a proposition that any such conclusions must be tied to stated facts. As Judge Eagan noted, "while specific facts are not necessary, some facts are." Here, Plaintiffs here have included the factual underpinnings for their legal conclusions. *Scheffler* has no application here.

Next, State Farm claims this case is like the *K2 Groceries* case. Like *Scheffler,* that

plaintiff alleged only "labels and conclusions, and a formulaic recitation of the elements of a cause of action" without pleading "any underlying facts . . .." After a first dismissal, that plaintiff added a few details such as its contractor's estimated repair costs and a claim that the insurer had unreasonably delayed payment because "on information and belief, Defendant has failed to make any payment to date . . ." (a footnote to the opinion notes the curious "upon information and belief" language (which seems to say that insured was unsure if payment was made) and also that the plaintiff's brief admitted the insurer had made *some* payment). The mere fact that the insurer did not pay the contractor's estimate— absent some factual basis to evaluate the reasonableness of that decision—did not rise to the level of bad faith. Thus, *that amended complaint* stated only a contract claim and failed to "nudge" [the] bad faith claim 'across the finish line from conceivable to plausible.'"[4]

Finally, State Farm cites the *Morgan* case. There too, the complaint lacked any details specific to the claim. Here, by contrast, Plaintiffs' have explained in the complaint exactly what State Farm did to violate the duty of good faith and fair dealing.

Other federal cases follow the rule of *Linn* (though without citation to *Linn*). For instance, Judge Jones denied summary judgment in a "battle of the experts" in *Merch. v. Safeco Ins. Co. of Am.*, No. CIV-21-391-J, 2022 U.S. Dist. LEXIS 235352, at \*9 (W.D. Okla. Nov. 15, 2022). There was evidence that the insurer failed to include necessary items

---

[4] That plaintiff also had opportunity to amend *after having once been dismissed yet "made minimal effort to correct any pleading deficiencies."* Emphasis added. Thus Judge Heaton refused a second request to amend. Plaintiffs here have not had the claim dismissed and even State Farm's characterization of Plaintiffs' **voluntary** amendment demonstrates great "effort" at curing potential deficiencies.

in its estimates, failed to conduct a "repairability assessment" (like the failure to consider the evidence here that cutting mismatched shingles was inappropriate) and other disputed conduct giving rise to an inference of bad faith. *Id.*

Likewise, in *Emcasco Ins. Co. v. Watonga Indus.,* 2022 U.S. Dist. LEXIS 126615 (W.D. Okla. July 18, 2022), Judge DeGiusti denied summary judgment based on "evidence from which a reasonable juror could conclude that [the insurer] determined that at least some of the damage to the roof was a covered loss but then issued policy benefits that it knew would be inadequate to fix the damage." *Id.* at *20. So too here—State Farm's own adjuster told it that was so. State Farm is on notice that its spot repair plan is unreasonable and contrary to the evaluations of the roofer, the public adjuster, its own first adjuster, as well as code and industry standard and the subject insurance policy. State Farm also knows that its improper repair plan results in gross underpayment as a result (which is why it pushed for that plan).

## F. Plaintiffs Adequately Pleads the Pattern and Practice Claims

State Farm cites the *Bunnell* case for an insinuation that Plaintiffs have to marshal all their evidence prior to filing suit. *Bunnell* applies the federal *Twombly* rule to dismiss a complaint that "[did] not plead any actual facts." *Bunnell v. Am. Bankers Ins. Co.*, No. 12-cv-00372-R, 2013 U.S. Dist. LEXIS 188546, at *5 (W.D. Okla. Jan. 17, 2013) (emphasis added). Also Judge Russell granted leave, "*sua sponte,*" for that plaintiff to amend to "comport with . . . *Twombly* and *Iqbal*"—thus even if the federal standard applied, amendment rather than dismissal is the remedy.

In *Jones v. Farmers Ins. Co.*, No. CIV-11-159-R, 2012 U.S. Dist. LEXIS 194873 (W.D. Okla. Feb. 29, 2012), Judge Russell—the same Judge Russell who dismissed *Bunnell*—allowed discovery into other roof claims even though that insurer, like State Farm here, insisted that "whether an insurer acted in good faith or not is to be judged under the particular facts of each case . . . ." *Id.* at * 5. Obviously that plaintiff did not have all of that pattern and practice evidence in hand when suit was filed (thus the need for discovery), yet Judge Russell held that such evidence "would show that it was more likely or more probable that [the insurer] breached its duties of good faith and fair dealing in denying [that plaintiff's] roof claim." *Id* at * 8. It stands to reason that if discovery is permissible in such cases, they would also survive motions to dismiss.

*Reibert v. CSAA Fire & Cas. Ins. Co*., No. 17-CV-350-CVE-JFJ, 2018 U.S. Dist. LEXIS 860 (N.D. Okla. Jan. 3, 2018), cites multiple bad faith cases based on evidence "relevant to a 'pattern' theory of bad faith conduct, which is generally permitted under Oklahoma law"; many such theories are viable and such evidence is admissible:

> Plaintiffs have also shown relevance to a "pattern" theory of bad-faith conduct, which is generally permitted under Oklahoma law. See *Vining v. Enter. Fin. Group,* 148 F.3d 1206, 1218 (10th Cir. 1998) (finding that, where plaintiff sought to prove a pattern and practice of bad-faith conduct by insured, evidence regarding other insureds was relevant to show defendant "acted in this case under Federal Rule of Evidence 406 (habit)" and that prejudice of evidence did not outweigh relevance of inquiry into defendant's "general business practices"); *Metzger v. Am. Fid. Assur. Co.,* No. CIV-05-1387-M, 2007 U.S. Dist. LEXIS 90235, 2007 WL 4342082, at *1 (W.D. Okla. Dec. 7, 2007) (same).6 For the same reasons explained above, the requested numerical data and reports are relevant to the specific theory that CSAA engaged in a state-wide pattern of denying claims in bad faith based on Hancock's findings and reports. Oklahoma courts have granted similar

discovery regarding an alleged "pattern" of bad-faith conduct. See *Magellan v. Zurich Am. Ins. Co*., No. 16-CV-668-CVE-FHM, 2017 U.S. Dist. LEXIS 132363, 2017 WL 3579209, at *2 (N.D Okla. Aug. 18, 2017) (compelling request for production of 85 other claim files where claimant was an employee of named insured and claimant's policy had similar language to plaintiff's policy based on relevance to pattern and practice theory and punitive damages); *Jones v. Farmers Ins. Co.,* No. CIV-11-159-R, 2012 U.S. Dist. LEXIS 194873, 2012 WL 12863976, at *2-3 (W.D. Okla. Feb. 29, 2012) (compelling interrogatory answer regarding number of times in past five years Farmers did not pay for roof damages under a specific circumstance similar to plaintiffs' denial, as relevant to whether Farmers engaged in pattern or practice of denying such claims and to punitive damages); *Providence Church, Inc. v. Guideone Ins.,* CIV-06-1201-D, 2008 U.S. Dist. LEXIS 127730, 2008 WL 11338501, at *4 (W.D. Okla. Jan. 18, 2008) (granting discovery requests regarding "code upgrade" claims of other insureds as relevant to whether defendant engaged in pattern and practice of categorically refusing certain claims and as relevant to punitive damage considerations).

*Id.* at * 16-17.

Perhaps the closest analog to this case is the *Providence Church* case cited above. The "general practice" evidence there was that the insurer had a practice of refusing to pay for certain items under its "code upgrade" coverage. That would be a way of improperly undervaluing a claim akin to State Farm's pattern of ignoring manufacturer installation and repair guidelines and proposing instead to spot repair by "cutting" nonconforming shingles to paste into the roof. As implied by *Providence Church,* that is something for the jury to evaluate.

Then there is *Farmers Ins. Co. v. Peterson*, 2003 OK 99, 81 P.3d 659, where the Oklahoma Supreme Court allowed discovery into a pattern and practice regarding med-

pay claims. The Court allowed discovery "for the purpose of [proving plaintiff's] theory that Farmers engaged in a pattern of conduct that was wrongful as it related to med-pay claims." *Id.* at ¶ 4, 660-661. Likewise, in *Grove v. State Farm Fire & Cas. Co.*, No. 13-CV-754-JED-FHM, 2014 U.S. Dist. LEXIS 133348, (N.D. Okla. Sep. 22, 2014), the court allowed pattern and practice discovery on the following showing of need by that plaintiff: "Plaintiffs state that discovery of lawsuits filed within the last five years will enable them to "test for a possible pattern of dismissal of similar claims" and to "divine a possible company-wide policy by Defendant of disputing similar claims." *Id.* at * 2-3. Again, that these courts allow discovery regarding other claim is good indication pattern and practice claims are (1) valid, and (2) would survive motions to dismiss.

Finally with respect to the pattern and practice claims, State Farm is not as mystified as it pretends. Indeed, State Farm's motion reveals how the "reasonable inference" rule is applied. For instance, at page 10, State Farm references the pattern and practice claims and contends Plaintiff "does not allege that State Farm followed this practice in handling ***their*** claim." That is patently false, as is stated in the First Amended Complaint:

> 51.   The Le Family was treated as a matter of routine business practice of improper claims handling as described in this section. As a routine claims handling practice, State Farm treated Plaintiffs similar to other claims and cases described in this section.
> 52.   State Farm's conduct in the denial of the Le Family's insurance claim demonstrates a consistent, willful, pervasive, and abusive scheme to deny Oklahomans insurance benefits associated with hailstorms, in the following respects:"

See also paragraph 85 and 98. Following the colon in the above, Plaintiffs' list the specific pattern and practices applied to their claim. Complaint paragraphs 53-97. As

noted earlier, State Farm understands the claims against it. Those claims are permissible under the law and Plaintiffs' have them adequately pled.

Finally with respect to the factual allegations, State Farm admits Plaintiff's conclusions "**could** give rise [to a bad faith inference] if supporting facts existed." As shown above, Plaintiffs' factual allegations and the inferences raised by those allegations do just that.

### G. Should the Court Dismiss the Bad Faith Claim, Plaintiff Will Seek Leave to Amend

Dismissal of a claim or complaint (as opposed to an entire action) is typically without prejudice such that amendment is permissible. *Clinton v. Sec. Ben. Life Ins. Co.*, 63 F.4th 1264, 1274 (10th Cir. 2023). Plaintiffs are confident the bad faith claim survives scrutiny. Should the Court disagree and dismiss the claim, Plaintiff will seek leave to amend to cure any pleading deficiencies. That request should be freely granted because "justice so requires." Fed. R. Civ. P. 15 (a)(2).

### IV. Conclusion

Plaintiffs state a valid bad faith claim against State Farm. State Farm plausibly breached the duty of good faith and fair dealing in all the ways described herein. The bad faith claim is well-supported in Oklahoma law such that the motion to dismiss must be overruled.

RESPECTFULLY SUBMITTED,

**MANSELL & ENGEL, PC**

/s/ Casey R. Lawson
M. Adam Engel, OBA #
Jordan L. Cartmell, OBA #31043
Casey R. Lawson, OBA #33947
204 North Robinson Avenue, 21st Floor
Oklahoma City, OK 73102
T: (405) 232-4100 ** F: (405) 232-4140
aengel@meclaw.net
jcartmell@meclaw.net
clawson@meclaw.net

**ATTORNEY FOR PLAINTIFF**

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on June 12, 2023, I filed the attached document with the Clerk of Court. Based on the records currently on file in this case, the Clerk of Court will transmit a Notice of Electronic Filing to those registered participants of the Electronic Case Filing System:

Timila S. Rother
Paige A. Masters

s/ M. Adam Engel